## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD B. BARTOLI II,** | ) | **CASE NO. 1:17CV01925** |
| **Individually and Derivatively on** | ) | |
| **Behalf of Sovereign Transport, Inc.** | ) | **JUDGE** |
| **218 Olde Harbour Court** | ) | |
| **Little River SC 29566,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | |
| **MICHELLE KROMMES,** | ) | |
| **Individually and as Officer of** | ) | |
| **Sovereign Transport, Inc.** | ) | |
| **21 Diamond Alley** | ) | |
| **Jeromesville, Ohio 44840,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **VERIFIED INDIVIDUAL AND** |
| **SOVEREIGN TRANSPORT &** | ) | **SHAREHOLDER DERIVATIVE** |
| **LOGISTICS, LLC** | ) | **COMPLAINT** |
| **c/o Michelle Krommes** | ) | |
| **Statutory Agent** | ) | |
| **1130 East Main Street, Suite 223** | ) | |
| **Ashland, Ohio 44805** | ) | **JURY DEMAND ENDORSED HEREON** |
| | ) | |
| **Defendants,** | ) | |
| **and** | ) | |
| | ) | |
| **SOVEREIGN TRANSPORT, INC.** | ) | |
| **c/o Michael G. Buytendyk** | ) | |
| **Statutory Agent** | ) | |
| **558 N. Market Street** | ) | |
| **Wooster, Ohio 44691** | ) | |
| | ) | |
| **Nominal Defendant.** | ) | |
| | ) | |

## INTRODUCTION

1.     Plaintiff EDWARD B. BARTOLI, II, individually and derivatively on behalf of

Nominal Defendant Sovereign Transport, Inc., ("Plaintiff BARTOLI"), by and through his

attorneys, hereby submit this Verified Individual and Shareholder Derivative Complaint against the Defendants MICHELLE KROMMES, individually and in her capacity as an officer of Sovereign Transport, Inc. ("Defendant KROMMES"), and SOVERIEGN TRANSPORT & LOGISTICS, LLC, ("STL, LLC"), for the benefit of Plaintiff BARTOLI individually, and derivatively on behalf of Nominal Defendant SOVEREIGN TRANSPORT, INC.'s ("ST, INC."), against the Defendants for their breach of contract, unjust enrichment, quantum meruit, violations of fiduciary duties, fraud and tortious interference with third-party business relationships and contracts.

2.      The allegations in this document are made upon Plaintiff BARTOLI's personal knowledge with regard to his own acts and upon information and belief as to all other matters. Plaintiff BARTOLI's information and belief is based upon, among other things, investigations conducted by Plaintiff BARTOLI and Plaintiff BARTOLI's derivative counsel, and investigation into known accountings of Nominal Defendant, review of emails between parties and non-parties, and review of publicly filed documents.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity among the parties.

4.      This action is not brought collusively to confer jurisdiction on this Court that it would not otherwise have.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1401 because one or more of the Defendants resides in or maintains executive offices in the Northern District of Ohio, and a substantial portion of the transactions and wrongs complained of herein –

including Defendants' breaches of fiduciary duty and interference with business relationships and contracts– occurred within this Court's district. Moreover, Defendants have engaged in numerous activities and have received substantial compensation within this Court's district.

## PARTIES

6.     Plaintiff is a citizen of the State of South Carolina and at all relevant times has held shares of Nominal Defendant ST, INC, and intends to continue to hold ST INC. shares at least through the resolution of this action.

7.     Nominal Defendant ST, INC. is a for-profit corporation which was organized under the laws of the State of Ohio in January of 2013.  ST, INC. is engaged as a freight shipping and trucking company, specializing in the shipping of liquid petroleum and related products.  ST, INC. has its principal place of business located at 2288 County Road 337, Loudonville, Ohio 44842, and is named in this action solely in a derivative capacity.

8.     Defendant KROMMES has been the President, CEO and majority shareholder of ST, INC. since 2013, and is citizen of the State of Ohio.

9.     Defendant STL, LLC is a domestic for-profit limited liability company organized under the laws of the State of Ohio with its principal place of business at 1130 East Main Street, Suite 223, in Ashland, Ohio 44805.

10.     Defendant KROMMES incorporated STL, LLC in or about December of 2016, and upon information and belief, acts as its owner, agent, and President.

## FACTUAL BACKGROUND

11.     On or about September of 2012, Plaintiff BARTOLI made an agreement with Defendant KROMMES and two other individuals, Teresa Duffy ("DUFFY") and Perry Leslie

3

("LESLIE"), to form an owner-operated trucking company. BARTOLI, KROMMES, DUFFY, and LESLIE are hereinafter referred to as "ST, INC. Shareholders".

12.     It was agreed by and between the ST, INC. Shareholders that Defendant KROMMES would assume the role of manager of financial affairs, with responsibilities to include, without limitation, tax matters, billing, financial reporting, maintenance of all corporate books and records, preparation and submission of all annual reports, maintaining records of quarterly and annual meetings, complying with all workers' compensation matters, maintaining employee files, preparation of internal controls and management of the day-to-day business of the company, including interfacing with customers and vendors, insurance matters, as well as driver and dispatch management.

13.     It was agreed by and between the ST, INC. Shareholders that Plaintiff BARTOLI would be responsible for the initial cash investment of capital, obtaining credit for the company, equipment acquisitions, and management of driver operations, and driving for ST, INC.

14.     It was agreed by and between the ST, INC. Shareholders that shareholder PERRY would maintain his role as a driver, and lease his equipment to the company.

15.     It was agreed by and between the ST, INC. Shareholders that shareholder DUFFY would have the role of managing and maintaining all safety and compliance requirements, driver company files, and Department of Transportation Company Logs.

16.     The ST, INC. Shareholders agreed that Defendant KROMMES was to hold a majority shareholder interest for the purpose of maintaining a minority business status for ST, INC.

17.     On or about December 27, 2012, the ST, INC. Shareholders signed a Pre-Incorporation Subscription Agreement, authorizing, *inter alia,* the adoption of ST, INC.'s name, the filing of the Articles of Incorporation, and authorizing the issuance of 1,500 common shares.

18.     The Pre-Incorporation Subscription Agreement set forth the initial subscription of 1,000 shares of ST, INC., with Defendant KROMMES holding 501 shares, Shareholder Duffy with 167, Shareholder Leslie with 166, and Plaintiff BARTOLI subscribing to 166 shares.

19.     In accordance with the agreements, ST, INC. was formally registered with the Ohio Secretary of State on January 9, 2013 as a domestic for-profit corporation.

20.     Upon information and belief, Plaintiff BARTOLI was the only ST, INC. Shareholder who made an initial capital investment to ST, INC., in the amount of $30,000.00.

21.     Upon information and belief, following the registration of ST, INC., no corporate formalities have been followed, including but not limited to, the adoption of bylaws, election of officers or directors, shareholder meetings, or memorialization of any formal shareholder agreement.

22.     ST, INC. was at all relevant times herein, subject to the provisions of Subchapter S of the Internal Revenue Code of 1986.

23.     According to ST, INC. internal documents, Defendant KROMMES is the President and CEO of ST, INC.  The same documents listed Mr. Bartoli as the Vice President of ST, INC.

24.     ST, INC. experienced growth and success in a short period of time throughout 2013 and 2014, and Plaintiff BARTOLI worked diligently to establish the company's creditworthiness, as well as good will and relationships in the trucking industries.  With the

exception of the first major customer, all pivotal customers were procured for ST, INC. by Plaintiff BARTOLI.

### ST, INC.'S MASTER LEASE AGREEMENTS AND PAYMENT FOR SERVICES RENDERED

25.     At all times relevant hereto from 2013 through 2016, Plaintiff BARTOLI was an independent contractor for ST, INC., performing services as a truck driver and operator.

26.     Relying on the representations and agreements with Defendant KROMMES on behalf of ST, INC. in or about 2013, Plaintiff BARTOLI used personal funds to purchase tractors and trailers.

27.     Defendant KROMMES knew it was Plaintiff BARTOLI's practice, and in fact, encouraged him to lease trucking equipment from a third party as ST, INC.'s needs demanded, and lease the same to ST, INC.

28.     On various dates, ST, INC. entered into several lease agreements with Plaintiff BARTOLI wherein he agreed to furnish, maintain, and provide equipment with a competent driver for the same, in exchange for ST, INC.'s agreement to compensate Plaintiff BARTOLI. Plaintiff BARTOLI is not in possession of all of the lease agreements for the reasons set forth, *infra.* and therefore is unable to include reference and attach all such agreements in this Complaint.

29.     Attached hereto as **Exhibit A** is a Master Lease Agreement, by and between Plaintiff BARTOLI and ST, INC., which was executed on April 1, 2013 ("April 2013 Agreement")

30.     Attached hereto as **Exhibit B** is a Master Lease Agreement, by and between Plaintiff BARTOLI and ST, INC., which was executed on August 21, 2013 ("August 2013 Agreement").

6

31.     Attached hereto as **Exhibit C** is a Master Lease Agreement, by and between Plaintiff BARTOLI and ST, INC., which was executed on January 2, 2016 ("January 2016 Agreement"), together with the April 2013 Agreement and the August 2013 Agreement (collectively "Master Lease Agreements").

32.     The Master Lease Agreements provide that ST, INC. was to pay to Plaintiff BARTOLI 85% of the gross revenue and 100% of the applicable fuel surcharge generated by the tractor and/or trailer in interstate or intrastate commerce ("Amounts Owed").

33.     Defendant KROMMES signed the Master Lease Agreements in her capacity as President of ST, INC.

34.     Plaintiff BARTOLI performed all services and submitted all necessary documentation to ST, INC. to receive the Amounts Owed. .

35.     Beginning in 2015, ST, INC. fell behind on its payments to Plaintiff BARTOLI for Amounts Owed.

36.     Upon Plaintiff BARTOLI's inquiry, Defendant KROMMES alleged that ST, INC. was having collection issues with regard to customers failing to timely pay their aging accounts receivable.

37.     In response to Defendant KROMMES' representations and in an effort to preserve the capital of ST, INC., Plaintiff BARTOLI maintained and personally made timely payments on the leased equipment and continued providing services as a truck driver and operator to ST, INC. up through May 2016.

38.     With Defendant KROMMES' knowledge, Plaintiff BARTOLI was required to use personal funds to pay for the leased equipment and he further allowed his driver pay to be

withheld for the benefit of other ST, INC. drivers until the purported cash flow issues of ST, INC. were resolved.

39.    Plaintiff BARTOLI made repeated requests to ST, INC. and Defendant KROMMES in 2015 and 2016 for payment of the Amounts Owed.

40.    Upon information and belief, ST, INC. has refused and failed to remunerate Plaintiff BARTOLI for Amounts Owed.

41.    As a direct result of ST, INC.'s failure to pay, Plaintiff BARTOLI defaulted on his leases of trucking equipment beginning in March of 2016.

42.    In addition to the Amounts Owed, upon information and belief, Plaintiff BARTOLI is also owed monies for his services to ST, INC. as a truck driver and operator, however such amounts of such monies is currently unknown due to ST, INC.'s refusal to provide requested records as set forth *infra.*

43.    Currently, Plaintiff BARTOLI faces deficiency judgments on trucking equipment which were subject to the Master Lease Agreements, in amounts upwards of $172,000.

44.    Plaintiff BARTOLI has expended a significant amount in attorneys' fees with regard to the deficiency judgments, and continues to incur attorneys' fees for the same.

## MISCONDUCT & MISMANAGMENT OF DEFENDANT ST, INC.

45.    Upon information and belief, in or about March 2015, minority ST, INC. Shareholder DUFFY requested financial records, reports, tax and corporate documents of ST, INC. from Defendant KROMMES.

46.    Upon information and belief, no documents were turned over or produced in response to the ST, INC. Shareholder DUFFY's requests.

47.     Upon information and belief, upon Defendant KROMMES' failure to produce any documents and ignoring demands for the same, ST, INC. Shareholders LESLIE and DUFFY memorialized their decision to separate from ST, INC. and begin a competing business by way of correspondence addressed to Defendant KROMMES.

48.     Upon information and belief, ST, INC. Shareholder DUFFY was paid a significant amount of money from the accounts of ST, INC. by Defendant KROMMES to satisfy her tax liability.

49.     On or about March 4, 2015, Defendant KROMMES hired her daughter, Paula Haven, to perform invoicing and handle accounts receivables for ST, INC.

50.     Upon information and belief, Paula Haven had no previous experience with corporate bookkeeping, invoicing, collections, or financial management.

51.     At some point in late 2015, it became clear to Plaintiff BARTOLI that Defendant KROMMES had unilaterally taken charge of all corporate matters of ST, INC. to the absolute exclusion of its minority shareholders.

52.     Plaintiff BARTOLI had grave concerns about the financial health of ST, INC. and the integrity of Defendant KROMMES' management thereof.

53.     In early 2016, Plaintiff BARTOLI began to question Defendant KROMMES and her daughter, Paula Haven, with regard to ST, INC.'s billing and account receivables practices, after receiving emails from ST, INC. customers who had been incorrectly billed or not billed at all for services provided.

54.     On or about February 25 2016, Plaintiff BARTOLI, after discussions with Defendant KROMMES, arranged for T.F. Allen & Company, P.C.  (hereinafter, "T.F. Allen") to

handle ST, INC.'s accounts receivables, invoicing, and accounting, as well as to review any available financial records.

55.     Upon information and belief, in March of 2016, Defendant KROMMES withdrew approximately $12,000 in cash from ST, INC.'s bank account, representing to Plaintiff BARTOLI that the IRS had come after her home for back taxes.

56.     Upon information and belief, ST, INC. was not repaid by Defendant KROMMES.

57.     During the time Defendant KROMMES was representing that ST, INC. was not in a strong financial condition, Defendant KROMMES continued to draw approximately $2,800 weekly from ST, INC. payroll in 2016.

58.     Beginning in the spring of 2016, multiple drivers for ST, INC. approached Plaintiff BARTOLI complaining that Defendant KROMMES and ST, INC. were shorting them on payroll, or failing to pay them altogether.

59.     In May of 2016, multiple customers contacted Plaintiff BARTOLI complaining that they had not received invoices and back up paperwork requested for services ST, INC. provided going back to the fall of 2015.

60.     In May of 2016, Plaintiff BARTOLI made informal requests to gain access to corporate accounting to ST, INC. and Defendant KROMMES.

61.     On or about May 4, 2016 Defendant KROMMES allowed T.F. Allen access to the PCS Software which ST, INC. used for transportation management software, to continue the task of cleaning up billing and accounting matters.

62.     T.F. Allen's audit revealed that Defendant KROMMES allowed ST, INC. to fall over seven (7) months behind on invoicing customers, amounting to uncollected receivables of approximately $600,000.00.

63.     On May 4, 2016, Defendant KROMMES relayed to Plaintiff BARTOLI that the 2013-2014 Quickbooks accounting for ST, INC. was incomplete and had gaps in the records for which receipts were available as backup.

64.     On May 4, 2016, Defendant KROMMES wrote to T.F. Allen, noting that there were no 2013 or 2014 Quickbooks accounting or backup receipts, rather, there were only the year-end reports and actual tax returns remaining for 2013-2014 accounting records.

65.     Upon information and belief, ST, INC.'s certified public accountant compiled ST, INC.'s 2013 and 2014 tax returns based only upon a profit and loss statement provided by Defendant KROMMES.

66.     After inquiry by Plaintiff BARTOLI, ST, INC.'s certified public accountant also requested the Quickbooks back up documentation in order to file taxes for the 2015 year, however, Defendant KROMMES responded that the Quickbooks back up was irreparably damaged.

67.     Growing further concerned with regard to deficiencies in billing and recordkeeping of ST, INC., on May 4, 2016 Plaintiff BARTOLI, through counsel, sent a formal Demand for Access to Corporate Records (the "Records Demand"). See **Exhibit D.**

68.     On or about May 9, 2016, Defendant KROMMES' daughter, Paula Haven was allegedly fired from ST, INC.

69.     Despite her clear failure to perform her job and the account mismanagement that had been taking place, upon information and belief, Defendant KROMMES paid her daughter Paula Haven approximately $1,000 a week for her services from the accounts of ST, INC.

70.     Upon information and belief, T.F. Allen assisted in recovering over $250,000.00 in outstanding accounts receivables in less than two (2) weeks on behalf of ST, INC.

71.     On or about May 16, 2016 Defendant KROMMES told Plaintiff BARTOLI that he did not have permission to change bank accounts or give T.F. Allen permission to service ST, INC.

72.     After the finding of improprieties by Defendant KROMMES, Defendant KROMMES caused all audit communication with T.F. Allen to cease and refused to comply with any further request in furtherance of the financial investigation.

73.     As a result of Defendant KROMMES mismanagement and failure to fully account for ST, INC.'s invoicing, ST, INC. lost customers.

74.     As a result of Defendant KROMMES and ST, INC.'s failure to remunerate T.F. Allen for their accounting and collection services, Plaintiff BARTOLI used his personal funds to pay for T.F. Allen's services through June, 2016, in the amount of approximately $6,775.00.

75.     On or about May 17, 2016, Plaintiff BARTOLI, through counsel wrote ST, INC. and Defendant KROMMES with a Demand for Immediate Action and Notice of Claims, expressing, *inter alia,* various concerns with the way ST, INC. was being run by Defendant KROMMES, reiterating the earlier Records Demand, and suggesting amicable steps forward. See **Exhibit E.**

76.     On or about May 26, 2016, in an effort to save on ST, INC. operating costs, Plaintiff BARTOLI contacted ST, INC.'s insurance agent, Megan Yost to remove trucks which were not currently servicing ST, INC. from ST, INC.'s commercial policy.

77.     Defendant KROMMES objected to the removal of three vehicles which seemed idle, because, upon information and belief, Defendant KROMMES was using the vehicles to her personal profit off the books of ST, INC.

78.    On or about July of 2016, Defendant KROMMES stopped communicating with ST, INC.'s accountant, Riggs & Associates, Inc., as Riggs & Associates, Inc. requested Quickbooks files to produce ST, INC.'s 2015 returns.

79.    Upon information and belief, Defendant KROMMES proceeded with a new accounting firm to continue the pattern of providing *de minimis* accounting records of ST, INC. so that her mismanagement and corporate waste would not be uncovered by ST, INC. Shareholders.

80.    By July of 2016, Defendant KROMMES stopped entering ST, INC. dispatch data into its PCS Software system, and did not give Plaintiff BARTOLI updated information upon request for the same.

81.    By July of 2016, Defendant KROMMES stopped using the ST, INC. billing email to which Plaintiff BARTOLI previously had access, and did not give him updated Shareholder information upon request for the same.

82.    On or about September 21, 2016, in a final good-faith effort to attempt to reach Defendant KROMMES and seek transparency for ST, INC., Plaintiff BARTOLI sent notice to ST, INC. Shareholders of a telephonic special meeting, with an outlined agenda. See **Exhibit F.**

83.    Defendant KROMMES received the Notice of Calling of Special Meeting of Shareholders of ST, INC. as it was served by Sheriff.

84.    Defendant KROMMES did not appear at the Special Meeting.

85.    Plaintiff BARTOLI has not been provided with ST, INC.'s federal or state tax returns for 2015 or 2016.

86.    According to accounting information provided by ST, INC., Defendant KROMMES was paid over $187,902 in 2015 from ST, INC.'s accounts.

87.     According to accounting information provided by ST, INC., Defendant KROMMES was paid over $153,908 in 2016 from ST, INC.'s accounts.

88.     Upon information and belief, Defendant KROMMES has been using the accounts of ST, INC. to her own personal expenses and benefit, and to the benefit of those related to her, to the exclusion and detriment of ST, INC.'s minority Shareholders.

89.     According to accounting information provided by ST, INC., Defendant KROMMES paid ST, INC.'s accountant, Riggs & Associates, $400.00 monthly from ST, INC.'s accounts.  Upon information and belief, this expenditure was not in the ordinary course of business of ST, INC. nor commensurate with the amount of accounting work done for ST, INC.

90.     According to accounting information provided by ST, INC., Defendant KROMMES paid her boyfriend, Eric E. Ott of Ott's Automotive, over $53,719 from ST, INC.'s accounts throughout 2015-2016. Upon information and belief, at least some of these expenditures were not in the ordinary course of business of ST, INC.

91.     According to accounting information provided by ST, INC., Defendant KROMMES paid her daughter, Paula Haven over $50,123 from ST, INC.'s accounts for January 2015 through May 2016. Upon information and belief, at least some of these expenditures were not in the ordinary course of business of ST, INC.

92.     According to accounting information provided by ST, INC., Defendant KROMMES paid David J. Haven over $7,416 from ST, INC.'s accounts from January 2015 through March 2016. Upon information and belief, this expenditure was not in the ordinary course of business of ST, INC.

93.     According to accounting information provided by ST, INC., Defendant KROMMES loaned $2,200 from ST, INC.'s accounts to Zachary A. Haven in 2015 and 2016.

Upon information and belief, this expenditure was not in the ordinary course of business of ST, INC.

94.     According to accounting information provided by ST, INC., and upon information and belief, Defendant KROMMES paid over $10,187 from ST, INC. accounts for personal items, including but not limited to, payments to veterinarians and to repair damages to her primary residence.

95.     According to the tax forms prepared at the behest of Defendant KROMMES, fiscal year 2013 illustrated that ST, INC. was profitable. ST, INC.'s profits surged in 2014 and 2015, after which no further financial data was made available to the ST, INC. minority Shareholders.

96.     Plaintiff BARTOLI did not receive a distribution payment from ST, INC. for the years of 2013, 2015 or 2016 but upon information and belief, is owed upwards of $50,000.00 in distributions from ST, INC.

97.     Upon information and belief, distributions have been paid historically by ST, INC. to other shareholders, including but not limited to Defendant KROMMES.

98.     However, according to ST, INC.'s 2013 tax returns, Defendant KROMMES held 51% of the interest in ST, INC. and reported ordinary business income of $38,798; DUFFY held 17% interest and reported $12,933; while Plaintiff BARTOLI and LESLIE each held 16% interest and reported ordinary business income of $12,172.

99.     According to ST, INC.'s 2014 tax returns, Defendant KROMMES held 51.14286% of the interest in ST, INC. and reported ordinary business income of $58,568; DUFFY held 16.66667% interest and reported $19,086; Plaintiff BARTOLI held 16.09524%

interest and reported $18,432; and LESLIE held 16.09523% interest and reported ordinary business income of $18,432.

100.     Upon information and belief, the decision not to pay distributions to Plaintiff BARTOLI was made by Defendant KROMMES.

101.     ST, INC. has failed to issue K-1 forms to ST, INC. Shareholders for 2015 and 2016.

102.     Upon information and belief, ST, INC. has failed to date to issue IRS Form-1099s to all of their contractors for the 2016 tax year.  Plaintiff BARTOLI was issued a 2016 IRS-Form 1099 in the amount of $300,000.00 from ST, INC., which is an amount which has no basis in reality.

103.     Upon information and belief, Defendant KROMMES has incurred unnecessary and improper expenses and has reimbursed herself from ST, INC.'s accounts without properly submitting receipts or documentation of the expenses.

104.     Defendant KROMMES has refused to account for distributions made from ST, INC. accounts to herself and related persons.

105.     Defendant KROMMES has failed to produced requested corporate records of ST, INC. in compliance with Ohio law.

106.     Upon information and belief, the decision not to supply Plaintiff BARTOLI with financial information and corporate documents concerning ST, INC. was made by Defendant KROMMES.

107.     Upon information and belief, the decision not to provide tax documentation to Plaintiff BARTOLI was made by Defendant KROMMES in an effort to conceal her misappropriations and mismanagement of ST, INC.

16

108.    Defendant KROMMES knowingly and/or negligently managed the financial affairs of ST, INC., resulting in additional unnecessary interest, costs, and losses.

**SELF DEALING AND USURPATION OF CORPORATE OPPORTUNITIES**

109.    Upon information and belief, in the summer of 2016 Defendant KROMMES knowingly and intentionally ignored Plaintiff BARTOLI's concerns and began a separate business venture, STL, LLC.

110.    Upon information and belief, STL, LLC is owned and operated by Defendant KROMMES.

111.    Upon information and belief, STL, LLC has been invoicing and collecting upon monies from customers rightfully owed to ST, INC. without accounting for the same.

112.    Upon information and belief, ST, INC. and/or STL, LLC were paid for services completed by Plaintiff BARTOLI, for which Defendant KROMMES refused to pay Plaintiff BARTOLI because she previously represented the services were not collectable.

113.    STL, LLC was organized to do business in Ohio on or about December 19, 2016.

114.    On or about December 19, 2016, Defendant KROMMES, without any consent of ST, INC.'s other members or Shareholders, recorded her consent on behalf of ST, INC. for Defendant KROMMES to use the similar corporate name STL, LLC.

115.    Upon information and belief, STL, LLC was and continues to operate under ST, INC.'s USDOT Number.

116.    Upon information and belief, STL, LLC has and continues to perform the very same services that ST, INC. was previously performing.

117.    Upon information and belief, Defendant KROMMES intentionally and knowingly set up and operated STL, LLC to take over the business and customers of ST, INC., and to freeze out and exclude the other members and Shareholders of ST, INC.

## DERIVATE AND DEMAND FUTILITY ALLEGATIONS

118.    Plaintiff BARTOLI, alongside his individual claims, also brings this action derivatively in the right and benefit of ST, INC. to redress injuries that have been suffered and are continuing to be suffered by ST, INC. as a direct result of Defendant KROMMES' and STL, LLC's violations of law.

119.    To the extent that any demand by Plaintiff BARTOLI made to ST, INC. or Defendant KROMMES to institute this action is insufficient, Plaintiff BARTOLI alleges such action is excused. Based upon all the allegations contained herein and Defendant KROMMES' actions to date, including acts of entrenchment, including the refusal to protect the interests of ST, INC., and ignoring the concerns and requests of Shareholders, such demand would be a futile and useless act.

120.    Plaintiff BARTOLI will adequately and fairly represent the interests of ST, INC. in enforcing and prosecuting its rights.

121.    Upon information and belief, Defendant KROMMES maintains complete voting control over any decisions required to be made, including any action to be taken in response to a Shareholder demand.

122.    Defendant KROMMES has directly participated in the wrongs complained of herein, and cannot act independently, objectively, or in good faith to advance the interests of ST, INC. or respond to a Shareholder demand.  Defendant KROMMES has acted to protect and

promote her personal interest and ensure her ongoing control over ST, INC. to the exclusion of the best interests of ST, INC. and minority Shareholders.

## CAUSES OF ACTION

### COUNT I
**Breach Of the April 2013 Agreement Against Defendants KROMMES And ST, INC.**

123.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 122 herein as if fully set forth, and alleges each element of a claim for breach of contract: offer, acceptance, consideration, breach, and damages.

124.     Defendants KROMMES and ST, INC. entered into the April 2013 Agreement with Plaintiff BARTOLI whereby ST, INC. would pay compensation to Plaintiff BARTOLI for the lease of certain equipment.

125.     The April 2013 Agreement provided that ST, INC. would compensate Plaintiff BARTOLI the Amounts Owed.

126.     Plaintiff BARTOLI has performed all obligations and satisfied all responsibilities pursuant to the April 2013 Agreement, except those waived or excused by operation of law.

127.     Defendants KROMMES and ST, INC. failed to pay the Amounts Owed to Plaintiff BARTOLI pursuant to the  April 2013 Agreement.

128.     Defendants KROMMES and ST, INC. are in breach of the April 2013 Agreement for their failure to pay the Amounts Owed.

129.     As a proximate result of Defendants' breach, Plaintiff BARTOLI has sustained damages in an amount to be proved at trial.

## COUNT II
**Breach Of the August 2013 Agreement Against Defendants KROMMES And ST, INC.**

130.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 129 herein as if fully set forth, and alleges each element of a claim for breach of contract: offer, acceptance, consideration, breach, and damages.

131.    Defendants KROMMES and ST, INC. entered into the August 2013 Agreement with Plaintiff BARTOLI whereby ST, INC. would pay compensation to Plaintiff BARTOLI for the lease of certain equipment.

132.    The August 2013 Agreement provided that ST, INC. would compensate Plaintiff BARTOLI the Amounts Owed.

133.    Plaintiff BARTOLI has performed all obligations and satisfied all responsibilities pursuant to the August 2013 Agreement, except those waived or excused by operation of law.

134.    Defendants KROMMES and ST, INC. failed to pay the Amounts Owed to Plaintiff BARTOLI pursuant to the  August 2013 Agreement.

135.    Defendants KROMMES and ST, INC. are in breach of the August 2013 Agreement for their failure to pay the Amounts Owed.

136.    As a proximate result of Defendants' breach, Plaintiff BARTOLI has sustained damages in an amount to be proved at trial.

## COUNT III
**Breach Of the January 2016 Agreement Against Defendants KROMMES And ST, INC.**

137.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 136 herein as if fully set forth, and alleges each element of a claim for breach of contract: offer, acceptance, consideration, breach, and damages.

138.    Defendants KROMMES and ST, INC. entered into the January 2016 Agreement with Plaintiff BARTOLI whereby ST, INC. would pay compensation to Plaintiff BARTOLI for the lease of certain equipment.

139.    The January 2016 Agreement provided that ST, INC. would compensate Plaintiff BARTOLI the Amounts Owed.

140.    Plaintiff BARTOLI has performed all obligations and satisfied all responsibilities pursuant to the January 2016 Agreement, except those waived or excused by operation of law.

141.    Defendants KROMMES and ST, INC. failed to pay the Amounts Owed to Plaintiff BARTOLI pursuant to the January 2016 Agreement.

142.    Defendants KROMMES and ST, INC. are in breach of the January 2016 Agreement for their failure to pay the Amounts Owed.

143.    As a proximate result of Defendants' breach, Plaintiff BARTOLI has sustained damages in an amount to be proved at trial.

<u>COUNT IV</u>
**Unjust Enrichment Against Defendants KROMMES and ST, INC.**

144.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 143 herein as if fully set forth.

145.    The truck driving services and equipment provided by Plaintiff BARTOLI were benefits conferred upon Defendants KROMMES and ST, INC.

146.    Defendant KROMMES knew that Plaintiff BARTOLI's services and equipment were valuable and beneficial to ST, INC.

147.    ST, INC.'s and/or Defendant KROMMES' retention of the value without repayment or other consideration would be unjust.

148.     Plaintiff BARTOLI has and continues to be damaged by ST, INC.'s and/or Defendant KROMMES' retention of the benefit, including *inter alia,* services rendered, client contract, goodwill established, customer lists, and personal property.

## COUNT V
### Quantum Meruit for Services Rendered by Plaintiff BARTOLI to ST, INC.

149.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 148 herein as if fully set forth.

150.     Plaintiff BARTOLI rendered truck driving and operating services to ST, INC. and/or Defendant KROMMES.

151.     ST, INC. and/or Defendant KROMMES received the benefit of the services rendered by Plaintiff BARTOLI.

152.     Based on information and belief, Plaintiff BARTOLI is owed monies from ST, INC. and Defendant KROMMES for the services rendered.

153.     As a direct and proximate result, Plaintiff BARTOLI has been damages in amount to be determined at trial.

## COUNT VI
### Breach of Fiduciary Duty As Against Defendant KROMMES for Self-Dealing

154.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 153 herein as if fully set forth.  Plaintiff BARTOLI brings this claim derivatively on behalf of ST, INC. and directly on behalf of himself.

155.     ST, INC. is a close corporation.

156.     Defendant KROMMES was at all times alleged herein the majority Shareholder of ST, INC. and controlled all aspects of ST, INC.

157. As a majority Shareholder in ST, INC. Defendant KROMMES owed heightened fiduciary duties of the utmost care, loyalty, candor, and independence owed to ST, INC. and its minority Shareholders, including Plaintiff BARTOLI.

158. Defendant KROMMES has violated her fiduciary duties owed to ST, INC. and its Shareholders and has acted to put her personal interests ahead of the interests of ST, INC.

159. Defendant KROMMES breached her fiduciary duties to ST, INC. and Plaintiff BARTOLI by the acts and omissions described herein, including but not limited to those acts of self-dealing that were designed to advance her own and her family members' economic interests, depriving Shareholders and Plaintiff BARTOLI of their ownership rights in ST, INC., failing to take steps to maximize the value of ST, INC. to its Shareholders, waste of ST, INC.'s corporate assets, failure to disclose material information, and acting to fraudulently transfer and usurp ST, INC.'s assets, customers and accounts to STL, LLC and/or others.

160. Plaintiff BARTOLI has been harmed in separate and distinct ways from ST, INC. by Defendant KROMMES' abuses, control and shareholder oppression causing direct harm, as Defendant KROMMES failed to remunerate Plaintiff BARTOLI for equipment purchased and leased exclusively to ST, INC, as well as services Plaintiff BARTOLI provided to ST, INC.

161. By the acts, transactions and courses of conduct alleged herein, Defendant KROMMES has and is attempting to unfairly deprive Plaintiff BARTOLI and other Shareholders of the true value of their investment in ST, INC.

162. As a proximate result of Defendant KROMMES' failure to exercise care and diligence in the exercise of her fiduciary obligations towards ST, INC. and its Shareholders, Plaintiff BARTOLI and ST, INC. have been harmed as alleged herein, including but not limited to sustaining significant damage to its finances, corporate image and goodwill, and exposing ST,

INC. to legal claims and liabilities.  ST, INC. has and continues to suffer harm in an amount to be proved at trial.

<u>COUNT VII</u>
**Breach of Fiduciary Duty for Abuse of Control and Gross Mismanagement Against Defendant KROMMES**

163.   Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 162 herein as if fully set forth.  Plaintiff BARTOLI brings this claim derivatively on behalf of ST, INC.

164.   ST, INC. is a close corporation.

165.   Defendant KROMMES was at all times alleged herein the majority Shareholder of ST, INC. and controlled all aspects of ST, INC.

166.   As a majority Shareholder in ST, INC., Defendant KROMMES owed heightened fiduciary duties of the utmost care, loyalty, candor and independence owed to ST, INC. and its minority Shareholders, including Plaintiff BARTOLI.

167.   Defendant KROMMES has violated her fiduciary duties owed to ST, INC. and its Shareholders by abusing her ability to control and influence over ST, INC. and intentionally abdicating her responsibilities and duties with regard to prudently managing the business of ST, INC. as required pursuant to the applicable law.

168.   As enumerated herein, Defendant KROMMES employed a scheme for purposes of maintaining and entrenching herself in her position of power, prestige and profit at, and control over, ST, INC., and to continue to receive the substantial benefits and salary associated with her position at ST, INC.

24

169.     As part of this scheme, Defendant KROMMES erected unreasonable and defensive barriers to prevent the disclosure of her wrongdoings and mismanagement with regard to ST, INC., thereby abusing her ability to control and influence ST, INC.

170.     Defendant KROMMES also had a duty to ST, INC. and its Shareholders to prudently supervise, manage and control the operations and business of ST, INC.

171.     Defendant KROMMES, by her actions and by engaging in the wrongdoing described herein, intentionally abandoned and abdicated her responsibilities and duties with regard to prudently managing the business of ST, INC. in a manner inconsistent with the duties imposed upon her by law.

172.     By committing the misconduct alleged herein, Defendant KROMMES breached the duties of due care, diligence and candor in the management and administration of ST, INC. and in the use and presentation of ST, INC.'s assets to the detriment of ST, INC. and ST, INC. Shareholders.

173.     During the course of the discharge of her duties, Defendant KROMMES knew or recklessly disregarded the unreasonable risks and losses to ST, INC. associated with her misconduct.  As a result, Defendant KROMMES grossly mismanaged ST, INC.

174.     By reason of the foregoing, ST, INC. has been harmed as alleged herein, and continues to suffer harm in an amount to be proved at trial.

## <u>COUNT VIII</u>
**Breach of Fiduciary Duty by Defendant KROMMES for Diversion of Corporate Assets**

175.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 174 herein as if fully set forth.  Plaintiff BARTOLI brings this claim both individually and derivatively on behalf of ST, INC.

176.     ST, INC. is a close corporation.

25

177.    Defendant KROMMES was at all times alleged herein the majority Shareholder of ST, INC. and controlled all aspects of ST, INC.

178.    As a majority Shareholder in ST, INC., Defendant KROMMES owed heightened fiduciary duties of the utmost care, loyalty, candor, and independence to ST, INC. and its minority Shareholders, including Plaintiff BARTOLI.

179.    Defendant KROMMES has violated her fiduciary duties owed to ST, INC. and its Shareholders by using ST, INC.'s corporate funds to pay for her personal expenses and using ST, INC.'s corporate funds and monies owed to ST, INC. by its customers, to fund STL, LLC.

180.    Defendant KROMMES had fiduciary and contractual obligations to deliver funds to Plaintiff BARTOLI and/or ST, INC. and has exercised wrongful dominion over the funds inconsistent with the right of possession of Plaintiff BARTOLI and ST, INC.

181.    Defendant KROMMES breached her fiduciary duties to ST, INC. and Plaintiff BARTOLI by the acts and omissions described herein, including but not limited to using ST, INC.'s corporate funds to pay for her personal expenses and using ST, INC.'s corporate funds and monies owed to ST, INC. by its customers, to fund STL, LLC.

182.    Plaintiff BARTOLI has been harmed in separate and distinct ways from ST, INC. by Defendant KROMMES diversion of corporate funds of ST, INC. causing direct harm to Plaintiff BARTOLI.

183.    As a direct and proximate result of Defendants KROMMES failure to exercise care and diligence in the exercise of her fiduciary obligations toward ST, INC. and its Shareholders, Plaintiff BARTOLI and ST, INC. have been harmed as alleged herein and has suffered damages, and will continue to suffer damages in an amount to be proved at trial.

## COUNT IX
**Fraud**

184.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 183 herein as if fully set forth.   Plaintiff BARTOLI brings this claim individually and derivatively on behalf of ST, INC.

185.    Defendant KROMMES has intentionally made false representations, suppressed and/or concealed certain material facts which they had a duty to disclose to Plaintiff BARTOLI, as illustrated herein, including but not limited to, the financial status of ST, INC., ST, INC.'s ability to pay for his leases and services, the mismanagement of accounts and collection procedures, and disposition of corporate assets.

186.    Defendant KROMMES had a duty to disclose these material facts as a result of the fiduciary relationship with Plaintiff BARTOLI. In addition, Defendant KROMMES had an independent duty to disclose these material facts since she undertook to make other affirmative representations about these matters, and was bound to make full and fair disclosure of all material facts.

187.    Defendant KROMMES intentionally made false representations, suppressed and/or concealed material facts with the intent to induce reliance and to defraud Plaintiff BARTOLI.

188.    At all relevant times, Plaintiff BARTOLI was unaware of the material facts that were suppressed by Defendant KROMMES as alleged herein, and Plaintiff BARTOLI's reliance on the representations was reasonable and justified.

189.    The aforementioned conduct of Defendant KROMMES was intentional to induce Plaintiff BARTOLI's reliance and to deprive Plaintiff BARTOLI of property and other legal

rights or otherwise causing injury, subjecting Plaintiff BARTOLI to cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

190.    As a proximate result of Defendant KROMMES' intentional and fraudulent suppression and concealment of the material facts, Plaintiff BARTOLI has suffered and continues to suffer damages in an amount to be proved at trial.

## COUNT X
### Unlawful Loans as to Defendant KROMMES

191.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 190 herein as if fully set forth.  Plaintiff BARTOLI brings this claim derivatively on behalf of ST, INC.

192.    Upon information and belief, some of ST, INC.'s payments to Defendant KROMMES were loans made outside the ordinary course of ST, INC.'s business.

193.    Ohio Revised Code §1701.95(A) makes the loans to Defendant KROMMES unlawful.

194.    Ohio Revised Code §1701.95(A) and (D) require Defendant KROMMES to repay the loans to ST, INC. with interest at the rate required by statute.

## COUNT XI
### Violation of O.R.C. §§1701.37 and 1701.38 as to Defendant KROMMES

195.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 194 herein as if fully set forth.  Plaintiff BARTOLI brings this claim both individually and derivatively on behalf of ST, INC.

196.    Defendant KROMMES violated O.R.C. §§1701.37 and 1701.38, by failing to keep correct and complete corporate records of account, minutes of proceedings, and records of shareholders for ST, INC. and/or refusing to provide Plaintiff BARTOLI with complete copies of

such records of ST, INC. with supporting documentation when Plaintiff BARTOLI, a Shareholder of the company, asked for such statements and documentation.

197.    An officer has a duty to provide all Shareholders with copies of all the financial and corporate records if that Shareholder asks that they be made available to him.

198.    As a direct and proximate result of Defendant KROMMES wrongful conduct, Plaintiff BARTOLI and ST, INC. suffered damages in an amount which cannot yet be fully determined.

<u>**COUNT XII**</u>
**Violation of O.R.C. §1701.95 as to Defendant KROMMES**

199.    Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 198 herein as if fully set forth.  Plaintiff BARTOLI brings this claim both individually and derivatively on behalf of ST, INC.

200.    Defendant KROMMES  violated O.R.C. §1701.95 by breaching the duty of loyalty to the corporation and its Shareholders.

201.    Defendant KROMMES used corporate funds without prior knowledge and approval by the disinterested directors or members of the corporation for her own personal benefit and contrary to the best interests of the corporation and its Shareholders.

202.    The acts as described herein were never approved by a majority of a disinterested group of directors or members and thus are a violation of the duty of loyalty that Defendant KROMMES owes to ST, INC.

203.    As a direct and proximate result of Defendant KROMMES' wrongful conduct, Plaintiff BARTOLI and ST, INC. suffered damages in an amount which cannot yet be fully determined.

## COUNT XIII
### Violation of O.R.C. §§1701.88 and 1701.95 as to Defendant KROMMES

204.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 203 herein as if fully set forth.  Plaintiff BARTOLI brings this claim both individually and derivatively on behalf of ST, INC.

205.     Defendant KROMMES violated O.R.C. §1701.95 by making unlawful loans and distribution of ST, INC.'s assets, without paying the known obligations owed.

206.     As an officer and director of ST, INC., Defendant KROMMES was required by O.R.C. 1701.88(D), among other things, to apply ST, INC.'s assets to satisfy the obligation to vendors, including Plaintiff BARTOLI, before distributing ST, INC.'s assets to themselves.

207.     Defendant KROMMES is individually liable to ST, INC. and Plaintiff BARTOLI for his unpaid but earned and owed compensation, amount owed on leases, as well as for the full amount of the unlawful loans and distributions of ST, INC. in and amount to be proven at trial.

## COUNT XIV
### Tortious Interference With Business Relationships and Contract Rights
### as Against Defendants KROMMES and STL, LLC

208.     Plaintiff BARTOLI incorporates by reference and re-alleges Paragraphs 1 through 207 herein as if fully set forth.  Plaintiff BARTOLI brings this claim both individually and derivatively on behalf of ST, INC.

209.     Defendants KROMMES and STL, LLC knew of the business relationship and contracts that existed between ST, INC. and various customers.

210.     Defendants KROMMES and STL, LLC knew of the business relationship and contracts that existed between Plaintiff BARTOLI and ST, INC.

211.    Defendant KROMMES, also acted unilaterally on behalf of ST, INC. to consent to STL, LLC's use of a similar name, upon information and belief, in order to intentionally mislead and poach ST, INC.'s business relationships and contracts.

212.    The Defendants intentionally interfered with the business relationships and contracts of ST, INC., inducing those with business relationships and/or contracts or outstanding balances for services rendered by ST, INC. to pay or transfer their contracts for services to STL, LLC.

213.    As a result of Defendants' intentional interference, acts, and omissions, multiple customers terminated their business relationships with ST, INC. and/or transferred their contracts to STL, LLC.

214.    As a result of the Defendants' intentional interference with the business relationships and contracts of ST, INC., Plaintiff BARTOLI's contract with ST, INC. was breached by ST, INC. for non-payment of BARTOLI's services and leases.

215.    Defendants' actions caused, and continue to cause both Plaintiff BARTOLI and ST, INC. financial damages as well as damage to ST, INC.'s brand and good will.

WHEREFORE, Plaintiffs pray for the following relief for each claim established at trial:

a.    As to Count I, judgment in favor of  Plaintiff BARTOLI and against Defendant KROMMES and ST, INC. for  damages in an amount in excess of $75,000;

b.    As to Count II, judgment in favor of Plaintiff BARTOLI and against Defendant KROMMES and ST, INC. for  damages in an amount in excess of $75,000;

c.    As to Count III, judgment in favor of Plaintiff BARTOLI and against Defendant KROMMES and ST, INC. in an amount in excess of $75,000;

d.    As to Count IV, in the alternative, judgment in favor of Plaintiff BARTOLI and against Defendant KROMMES and ST, INC. in an amount in excess of $75,000;

e.    As to Count V, judgment in favor of Plaintiff BARTOLI and against Defendant KROMMES and ST, INC. in an amount in excess of $75,000;

f.    As to Count VI, judgment in favor of Plaintiff BARTOLI, derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

g.    As to Count VII, judgment in favor of Plaintiff BARTOLI, derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

h.    As to Count VIII, judgment in favor of Plaintiff BARTOLI, derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

i.    As to Count IX, judgment in favor of Plaintiff BARTOLI, individually and derivatively on behalf of ST, INC. in an amount in excess of $75,000, together with punitive damages, attorney fees and costs;

j.    As to Count X, judgment in favor of Plaintiff BARTOLI, derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

k.    As to Count XI, a judgment in favor of Plaintiff BARTOLI and ST, INC. as against Defendant KROMMES ordering her to provide an accounting of all the finances of ST, INC. and make available copies of all the financial and corporate

records of ST, INC. to the Shareholders and for damages in an amount in excess of $75,000;

l.     As to Count XII, judgment in favor of  Plaintiff BARTOLI, individually and derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

m.     As to Count XIII, judgment in favor of  Plaintiff BARTOLI, individually and derivatively on behalf of ST, INC. and against Defendant KROMMES for damages in an amount in excess of $75,000;

n.     As to Count XIV, judgment in favor of  Plaintiff BARTOLI, individually and derivatively on behalf of ST, INC. and against Defendant KROMMES and STL, LLC for damages in an amount in excess of $75,000;

o.     For such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kathleen A. Nitschke*
Kerin Lyn Kaminski (0013522)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile:  216-621-2399
E-Mail:    kkaminski@thinkgk.com
          knitschke@thinkgk.com
***Counsel for Plaintiff Edward B. Bartoli, II***

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff BARTOLI demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. Nitschke*
Kerin Lyn Kaminski (0013522)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile:  216-621-2399
E-Mail:     kkaminski@thinkgk.com
            knitschke@thinkgk.com
***Counsel for Plaintiff Edward B. Bartoli, II***

## VERIFICATION

I SWEAR (OR AFFIRM) UNDER THE PAINS AND PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT I HAVE REVIEWED THE ALLEGATIONS FOUND IN THIS COMPLAINT AND THEY ARE TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE AND UNDERSTANDING, OR WHERE MADE IN UPON INFORMATION AND BELIEF, ARE BASED UPON SPECIFIED INFORMATION, DOCUMENTS, OR BOTH.

EDWARD B. BARTOLI, II

34

Scanned by CamScanner